# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

ALQUAN MUSLIM,

        Plaintiff,

   v.

ABU HASSAN, et al.,

        Defendants.

Civil Action No.: 13-cv-3484 (PGS)

MEMORANDUM AND ORDER

SHERIDAN, U.S.D.J.

     This matter is before this Court on Defendant Lance Carver's motion for summary judgment. [ECF No. 97]. The Court also reviews Plaintiff's motion for reconsideration for Appointment of Counsel. [ECF No. 108]. Plaintiff, Alquan Muslim, a prisoner confined at New Jersey State Prison in Trenton, New Jersey, brought this action, *pro se*, against Defendant, Lance Carver[1], alleging civil rights violation under 42 U.S.C. §1983, for inadequate medical care in violation of the Eight Amendment. Carver is a registered nurse employed by Rutgers, the State University of New Jersey (Rutgers), who worked at the New Jersey State Prison as a staff nurse. Plaintiff alleges that on October 7, 2012, Defendant acted with deliberate indifference with regards to his medical needs.

I.

     In or about 2007, Plaintiff was diagnosed with a nonischemic dilated cardiomyopathy. (See Pl. Opp. Ex. A – follow up appointment). On October 7, 2012, Plaintiff presented to the prison

---

[1] One of several defendants named by Plaintiff in this action.

1

clinic complaining of chest pain. Plaintiff was seen by Jennifer Rapp, R.N., who noted in her findings and observations that at the time Plaintiff appeared depressed, lethargic, and falling asleep during evaluation and questioning. She suspected possible drug overdose and placed him on a "suicide constant watch." As Rapp prepared to administer an EKG to Plaintiff, Carver approached her to advise her that the doctor on call instructed that Plaintiff should be sent back to his housing unit whenever he presented to the clinic. Rapp and Carver then allegedly engaged in a conversation about the matter.

Plaintiff's condition eventually worsened. Rapp called EMS and had him transferred to St. Francis Medical Center. (Statemt. of Undisputed Material Facts (SUMF), ECF 97-3, pg. 3). At the hospital, an EKG, revealed "non specific st/t wave abnormalities similar to previous EKG." (SUMF, pg. 3). An ECHO showed left ventricular hypertrophy. (*Id.* pg. 4. See Ex. A). Plaintiff was hospitalized for three days and was discharged on October 10, 2012.

According to the account provided by Defendant, Plaintiff was seen by Carver on October 6, 2012, who notified the doctor on call, Ihuoma Nwachuwu of Plaintiff's condition. The doctor provided a verbal telephone order for Motrin 800mg. for 10 days. An EKG was also performed on the same day. Dr. Nwachuwu advised Carter that Plaintiff was to return to his unit. He was to present to a follow up appointment on October 9. (SUMF, pg. 2-3.)

Plaintiff filed a Complaint with this Court on June 5, 2013. [ECF No. 1]. He filed a Supplemental Complaint on September 8, 2015. [ECF No. 52]. Defendant Carver moved to dismiss this matter on October 20, 2015 [ECF No. 57]. This Court denied the motion, but struck paragraph 1,2,4,5, 7-14 of the Supplemental Complaint for failure to comply with Fed. R. Civ. P. 15(d), leaving the remainder intact. [ECF No. 68].

At his deposition, on May 17, 2017, when questioned about his reasons for filing a Complaint against Carver, Plaintiff stated:

> Q. So the extent of your complaint with Mr. Carver is this conversation he had with Miss [Rapp], correct?
>
> A. Yes, he interfered with her doing the EKG.
>
> Q. Other than interfering with Nurse [Rapp] is there anything else that we haven't talked about that you believe Mr. Carver did to prevent you from getting medical care?
>
> [. . .][omitted question]
>
> A. Well, he delayed it.
> Q. How long did he delay it?
>
> [. . .]
>
> A. From the time that - - to the sergeant came, I'll say that's at least 15, 20 minutes later. And from there before they called 911 it was like another 10, 15 minutes.

[EFC No. 97-1, T38:25-40:3].

Defendant Carver filed a motion for summary judgment on July 14, 2017. The Court held oral argument on the motion on December 13, 2017. During oral argument, the Court gave parties an opportunity to clarify the timeline of the events that occurred on the day of the incident. Plaintiff attested that on October 7, 2012 he presented to the prison clinic and remained there for approximately 2 or 3 hours. Plaintiff also mentioned that the conversation that took place between Rapp and Carver on that day, lasted for about five minutes.

## II.

Summary judgment is appropriate under Fed. R. Civ. P. 56(c) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-

3

23 (1986). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." *Marino v. Indus. Crating Co*., 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson,* 477 U.S. at 255).

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. *Jersey Cent. Power & Light Co. v. Lacey Twp.,* 772 F.2d 1103, 1109 (3d Cir. 1985). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson,* 477 U.S. at 248; *Siegel Transfer, Inc. v. Carrier Express, Inc*., 54 F.3d 1125, 1130-31 (3d Cir. 1995). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." *Schoch v. First Fidelity Bancorp*., 912 F.2d 654, 657 (3d Cir. 1990); *see also* Fed. R. Civ. P. 56(e) (requiring nonmoving party to set forth specific facts showing that there is a genuine issue for trial"). Moreover, only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *Anderson*, 477 U.S. at 247-48. If a court determines, after drawing all inferences in favor of [the non-moving party], and making all credibility determinations in his favor "that no reasonable jury could find for him, summary judgment is appropriate." *Alevras v. Tacopina*, 226 Fed. App'x. 222, 227 (3d Cir. 2007).

III.

Defendant Carver argues that claims against him do not relate to care provided but are solely based on a conversation that Carver allegedly had with Nurse Rapp who was treating Plaintiff. (Def. Br. Pg. 1). Defendant further supports that summary judgment should be granted because there are no genuine issues of material facts (Id. at 5).

First, we note that courts must liberally construe pleadings that are filed *pro se*. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The Supreme Court has made clear that the standard for claims alleging failure to provide medical treatment to prisoners is "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U. S. 97, 104 (1976). To state an inadequate medical care claim under the Eighth Amendment's proscription against cruel and unusual punishment, an inmate must allege two elements: (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need. *Estelle*, 429 U.S. at 106; *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003).

"A medical need is 'serious,' in satisfaction of the second prong of the *Estelle* test, if it is 'one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention.'" *Monmouth County Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (quoting *Pace v. Fauver*, 479 F.Supp. 456, 458 (D.N.J.1979), aff'd, 649 F.2d 860 (3d Cir. 1981)). Denial of or delay in treatment that causes unnecessary and wanton infliction of pain may also constitute a serious medical need. *Id.* (citing *Estelle*, 429 U.S. at 103).

The second element of the *Estelle* test is subjective, requiring "an inmate to show that prison officials acted with deliberate indifference to his serious medical need." *Holder v. Merline*,

2005 U.S. Dist. LEXIS 32237, *4 (D.N.J. Jun. 27, 2005) (citing *Natale*, 318 F.3d at 582) (finding deliberate indifference requires proof that the official knew of and disregarded an excessive risk to inmate health or safety).

Plaintiff may indicate deliberate indifference by establishing that the defendants intentionally denied or delayed medical care." *Positano v. Wetzel*, 529 Fed. Appx. 116, 119 (3d Cir. 2013) (internal citation omitted). Nevertheless, "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.* (quoting *United States ex rel. Walker v. Fayette Cnty.*, 599 F.2d 573, 575 n.2 (3d Cir. 1979)). Further, conduct that constitutes negligence does not rise to the level of deliberate indifference; rather, deliberate indifference is a "reckless disregard of a known risk of harm." *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 836 (1994)). Additionally, an allegation of medical malpractice or simple negligence does not rise to the level of a constitutional violation. *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004). "Mere disagreement as to the proper medical treatment is also insufficient." *Id.* at 235 (internal citation omitted).

Courts have found deliberate indifference "in situations where there was 'objective evidence that [a] plaintiff had serious need for medical care,' and prison officials ignored that evidence[,] *Nicini v. Morra*, 212 F.3d 798, 815 n. 14 (3d Cir. 2000) [and] in situations where 'necessary medical treatment is delayed for non-medical reasons.' *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987)[,] [cert. denied, 486 U.S. 1006 (1988)]." *Natale*, 318 F.3d at 582.

Defendant argues that Plaintiff failed to meet both prongs of the *Estelle* test. Specifically, Plaintiff has not shown any injury of serious nature contemplated by the Eight amendment and

also failed to produce any evidence to show that any alleged delay in treatment on the date of the incident caused him either life-long handicap or permanent loss. (Def. Br. pg. 8). Further, Defendant argues that Plaintiff has produced no evidence to show that Carver unnecessarily and wantonly inflicted pain on him, nor that he denied Plaintiff treatment. (*Id*.)

The Court agrees. Plaintiff's claim is solely based on the conversation that Carver had with Rapp on October 7, 2012, which Plaintiff acknowledged was about five minutes long. Plaintiff failed to establish that there was deliberate indifference by Carver or that Carver consciously disregarded a risk of harm. With regards to the alleged delay, even if the conversation with Rapp caused a delay, it does not rise to the level of deliberate indifference. For those reasons, summary judgment with regards to Plaintiff's claims against Defendant Carver is granted.

Defendant also raises arguments as to Plaintiff's failure to exhaust his administrative remedies. The Court briefly reviews this procedural issue. (Def. Br. pg. 13). Plaintiff attests that he filed an administrative remedy on October 13, 2012. He also sent a letter to Administrator Charles Warren on November 27, 2012. The letter's subject line was "RE: Administrative Remedy Complaint filed on 10/13/12." The letter stated:

> On the above referenced date, I filed an administrative remedy complaint about being denied medical treatment on 10/3/12, and as of the above date, I have not received a response and it is well past the al[l]otted time allowed for a response.
>
> I await your response in this matter.[2]

[ECF 1, Compl. Ex. A]. Marci L. Masker responded to the letter and referred to the incidents of October 7, suggesting the administrative remedy form was filled out for the correct date,

---

[2] The date of the incident alleged in the Complaint is October 7, 2012. A copy of the Administrative remedy complaint was not provided.

7

eventhough Plaintiff listed the wrong date of the incident on the letter to Mr. Warner. With regards to the incidents of October 7, Masker stated:

> With regards to your medical complaint, as a precaution, all staff may place an inmate on suicide watch if, in their opinion, they observe signs or symptoms of potential suicide risk. It was noted that you presented to medical on 10/7/12 with a significant change in demeanor and with flat affect to custody and nursing staff. Therefore in the nurse's clinical opinion, you were placed on watch. Based upon this information the nurse appears to have acted in an appropriate and responsible manner in accordance with good medical practice. I hope this addresses your concerns.

[*Id.* Ex. B.] The letter further stated that Plaintiff had been seen in response to his original administrative complaints. *Id*. Plaintiff responded to Masker's letter explaining the events that occurred on October 7, including the alleged delay in providing medical care, were caused by Carver when he interrupted treatment by Rapp.

Plaintiff filed a Complaint with this Court on June 5, 2013. [ECF No. 1].

Defendant's argument is based on a discrepancy between the dates mentioned by Plaintiff in his letters regarding the incident. Nevertheless, a careful reading of Plaintiff's letter to Ms. Masker reveals that the mentioning of the October 3 date was likely an error and Plaintiff did file an administrative complaint for the events of October 7. Therefore, Plaintiff exhausted his administrative remedies prior to bringing this action.

VI.

Lastly, the Court reviews Plaintiff's application for reconsideration for appointment of counsel. [ECF No. 108]. Plaintiff filed this application on November 30, 2017, after his third application for pro bono counsel was denied by an order of the Hon. Douglas E. Arpert, on October 11, 2017. Under Local Rule 7.1(i),

> Unless otherwise provided by statute or rule […] , a motion for reconsideration shall be served and filed within 14 days after the entry of the order or judgment on the original motion by the Judge or Magistrate Judge.

Plaintiff filed this application more than one month after Judge Arpert issued an order on the initial application. Therefore, Plaintiff's application for reconsideration is denied as untimely.

ORDER

This matter is before the Court on Defendant Lance Carver's motion for summary judgment [ECF No. 97] and Plaintiff's application for reconsideration for appointment of counsel [ECF No. 108]; the Court having carefully reviewed and taken into consideration the submissions of the parties, as well as the arguments therein presented, and for good cause shown, and for all of the foregoing reasons,

IT IS on this 20th day of December, 2017;

**ORDERED** that Plaintiff's application for reconsideration for appointment of counsel [ECF No. 108] is DENIED; and it is further,

**ORDERED** that Defendants' motion for summary judgment [ECF No. 97] is GRANTED. The Clerk is directed to Terminate Lance Carver as a Defendant in this matter.

*s/Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.