NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| ALQUAN MUSLIM, | : | |
| --- | --- | --- |
| Plaintiff, | : | Civ. No. 13-3484 (PGS-DEA) |
| v. | : | |
| ABU AHSAN, et al., | : | MEMORANDUM |
| Defendants. | : | |

**<u>PETER G. SHERIDAN, U.S.D.J.</u>**

This matter comes before the Court on Defendant Dr. Abu Ashan's motion to dismiss the complaint with prejudice. (ECF No. 124). Plaintiff Alquan Muslim opposes the motion. (ECF No. 132).[1] For the following reasons, the motion to dismiss is granted. The claims against Dr. Ahsan are dismissed with prejudice.

**I.**

In order to resolve this motion, it is necessary to review the history of this case. Plaintiff Alquan Muslim, a prisoner confined at New Jersey State Prison ("NJSP"), filed his initial civil rights action pursuant to 42 U.S.C. § 1983 on May 30, 2013 against Defendants "Dr. Abu Hassan"[2]; Nurse Jane Doe; Nurse L. Carver; Dr. John Doe; Nurse J. Rapp; and Sergeant Rokeach. (ECF No. 1). Plaintiff, who was diagnosed with a nonischemic dilated cardiomyopathy

---

[1] Plaintiff also moves to have his opposition brief filed as within time. (ECF No. 132). The Court grants that motion.
[2] Plaintiff incorrectly identified Dr. Ahsan as "Dr. Hassan" in his initial complaint.

in or about 2007, alleged that various prison officials were deliberately indifferent to his serious medical needs in violation of his Eighth Amendment rights.

The complaint alleged that on October 7, 2012, Plaintiff presented to the prison clinic complaining of chest pain. Plaintiff was seen by Jennifer Rapp, R.N., who noted in her findings and observations that at the time Plaintiff appeared depressed, lethargic, and was falling asleep during the evaluation and questioning. She suspected possible drug overdose and placed him on a "suicide constant watch." As Rapp prepared to administer an EKG to Plaintiff, Carver approached her to advise her that the doctor on call instructed that Plaintiff should be sent back to his housing unit whenever he presented to the clinic. Rapp and Carver then allegedly engaged in a conversation about the matter. Plaintiff's condition eventually worsened. Rapp called EMS and had him transferred to St. Francis Medical Center. (ECF 97–3 at 3). At the hospital, an EKG, revealed "non specific st/t wave abnormalities similar to previous EKG." (*Id.*). An ECHO showed left ventricular hypertrophy. (*Id.* at 4). Plaintiff was hospitalized for three days and was discharged on October 10, 2012.

On May 16, 2014, the Court screened the Complaint pursuant to 28 U.S.C. §§ 1915 and 1915A and permitted the Eighth Amendment claims against Defendants Rapp, Carver and Dr. Doe to proceed. (ECF Nos. 7-8). The Court dismissed the claims against "Dr. Hassan" because Plaintiff had failed to allege any personal involvement. (*Id.*). The Court dismissed the claims against Sergeant Rokeach because he was a non-medical official and Plaintiff was under the care of the medical staff. (*Id.*).

Plaintiff filed a "Supplemental Complaint" alleging claims against Dr. Ahsan, this time correcting the misidentification from the initial complaint, Stephen D'Ilio, Antonio Campos and Lieutenant Kennedy on July 10, 2014. (ECF No. 11). He alleged that on January 28, 2014, he

2

experienced chest pain, shortness of breath and dizziness, which eventually led to him passing out in his cell. (*Id.* at ¶ 11). He went to Saint Francis Medical Center, where it was determined that he did not have a heart attack. (*Id.* at ¶ 12). He returned to the prison infirmary where he was seen by Dr. Ahsan who discharged him in spite of finding Plaintiff's blood pressure to be high. (*Id.*). Plaintiff also complained to Dr. Ahsan about chest pains, shortness of breath and dizziness. (*Id.*). Plaintiff alleged that he saw nurse practitioner Carol Gallagher for a follow up on April 22, 2014, since he had been admitted to Saint Francis Medical Center on April 15th for chest pain, shortness of breath, high blood pressure, dizziness and an abnormal EKG. (*Id.* at ¶ 14). Plaintiff alleges that he informed Nurse Gallagher that he believed his symptoms were caused by the lack of oxygen in his cell. (*Id.*).

On April 25, 2014, Plaintiff went to the infirmary complaining of shortness of breath, where he was seen by Nurse Practitioner Ivory. (*Id.* at ¶ 15). Plaintiff stated that he told Nurse Ivory that his symptoms are due to the lack of central air conditioning and the nurse told Plaintiff she would speak to Dr. Ahsan about moving Plaintiff to the newer part of the prison. (*Id.*). Nurse Ivory later told Plaintiff that Dr. Ahsan had refused to move him to the other part of the prison. (*Id.*). Thereafter, Plaintiff was confined to the Administrative Segregation Unit for ninety days, where he was forced to stay in a cell with no windows, lead paint, no hot water, and a "smelly" toilet. (*Id.* at ¶ 16). After his release from Administrative Segregation, Plaintiff was placed in a condemned cell, with a leaking toilet and no hot water. (*Id.* at ¶ 17). Plaintiff alleged that Defendant D'Ilio was aware of the conditions in both of those cells. (*Id.*). Plaintiff stated that he submitted numerous grievances seeking relocation to the air-conditioned part of the prison, but Defendant Campos refused to provide Plaintiff relief. (*Id.* at ¶ 18).

On March 21, 2014, Plaintiff met with Defendant Kennedy about relocation and he informed Plaintiff that as soon as a cell in the air-conditioned portion of the prison became available, Plaintiff would be moved. (*Id.* at ¶ 19). However, several cells became available since that time and Plaintiff was not moved. (*Id.*). Plaintiff alleges that an outside cardiologist has recommended that Plaintiff be moved to the air-conditioned part of the prison, but Dr. Ahsan refused to move Plaintiff based on personal animus. (*Id.* at ¶ 20).

Summons were issued on November 12, 2014, (ECF No. 25), and Dr. Ahsan was served on December 4, 2014, (ECF No. 29). He did not file an answer. Defendants Campos, D'Ilio, and Kennedy moved to dismiss the Supplemental Complaint for improper joinder on January 21, 2015. (ECF No. 30). The Court dismissed the Supplemental Complaint in its entirety on February 23, 2015. (ECF No. 33).[3]

Plaintiff filed a motion for leave to file a second supplemental complaint, but the motion was denied. (ECF No. 36). He filed another motion on March 25, 2015. (ECF No. 41). The Court held a hearing on the motion on April 30, 2015. (ECF No. 47). The Court granted the motion to amend on August 12, 2015. (ECF No. 50). Defendant Carver, the only defendant who had answered the complaint, filed a motion to dismiss the supplemental complaint as Plaintiff filed an amended complaint instead of the court-approved supplement. (ECF No. 57). Paragraphs 1, 2, 4, 5, and 7-14 of the supplemental complaint were struck, and the remainder of the submission were permitted to proceed. (ECF No. 68). Summonses were issued. (ECF No. 71).

The case proceeded in the normal course until Defendant Carver's motion for summary judgment was granted on December 21, 2017. (ECF No. 110). On July 2, 2018, the Court issued

---

[3] Plaintiff filed a separate complaint against D'Ilio, Campos, and Kennedy on July 25, 2015 raising these same claims. *Muslim v. D'Ilio*, No. 15-5796 (D.N.J. administratively terminated July 2, 2019).

a notice of call for dismissal against Defendants Ahsan and Rapp. (ECF No. 112). Plaintiff filed a letter saying that Dr. Ahsan had been served with the complaint on December 4, 2014 but had never answered the supplemental complaint. (ECF No. 113). In the interests of justice, the Court ordered summons to be reissued. (ECF No. 116). Counsel for Dr. Ahsan filed a letter objecting to the summons, (ECF No. 120), and the Court instructed counsel to answer or otherwise respond to the complaint, (ECF No. 123).

Dr. Ahsan now moves to dismiss the claims against him with prejudice. (ECF No. 124). He argues the claims in the "supplemental complaint" are the same claims that were previously dismissed by the Court and should not proceed. He also argues Plaintiff failed to exhaust his administrative remedies. The Court held oral argument on September 4, 2019, at which time Plaintiff appeared by telephone. This matter is now ripe for disposition.

## II.

When considering a motion to dismiss a complaint for failure to state a claim, Fed. R. Civ. P. 12(b)(6), the Court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the non-moving party. A motion to dismiss may be granted only if the plaintiff has failed to set forth fair notice of what the claim is and the grounds upon which it rests that make such a claim plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Although Rule 8 does not require "detailed factual allegations," it requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

In reviewing the sufficiency of a complaint, the Court must "tak[e] note of the elements [the] plaintiff must plead to state a claim. Second, it should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, [w]hen there

are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (alterations in original) (internal citations and quotation marks omitted). "[A] complaint's allegations of historical fact continue to enjoy a highly favorable standard of review at the motion-to-dismiss stage of proceedings." *Id.* at 790.

### III.

Dr. Ahsan's arguments in favor of dismissal are that: (1) plaintiff has failed to state a claim even after being given multiple chances to amend his complaint; (2) the claims in the supplemental complaint are identical to the claims that were dismissed by the Court in its prior opinions, and; (3) Plaintiff failed to exhaust his administrative remedies against Dr. Ahsan.

The claims against Dr. Ahsan (improperly pled as "Dr. Hassan" in the original complaint) were dismissed by the Court in its May 16, 2014 screening opinion because Plaintiff had failed to allege any personal involvement. (ECF Nos. 7 & 8). His first supplemental complaint was dismissed in its entirety on February 23, 2015. (ECF No. 33). Plaintiff's second supplemental complaint was permitted to proceed on claims that Dr. Ahsan was deliberately indifferent to Plaintiff's medical condition after Plaintiff was discharged from the hospital on January 31, 2014. (ECF No. 52 ¶ 17). He asserts that Dr. Ahsan had to be called repeatedly at his home between February 1st and 7th due to Plaintiff's high blood pressure. (*Id.*). Dr. Ahsan told the nurse to give Plaintiff "motrim" [sic] but that did not help Plaintiff's blood pressure. (*Id.*). Plaintiff was discharged from the infirmary later that day. (*Id.*). A nurse told Dr. Ahsan that Plaintiff's blood pressure was 199/106, but Dr. Ahsan responded that he had already discharged Plaintiff. (*Id.*). In April 2014, Plaintiff was informed that Dr. Ahsan refused to move him to the air-conditioned section of the prison. (*Id.* ¶ 20). In June 2014, Plaintiff received a

recommendation from a cardiologist that he be moved to the air-conditioned section of the prison. (*Id.* ¶ 21). Plaintiff alleges Dr. Ahsan ignored this recommendation. (*Id.*). Plaintiff alleges he has complained about Dr. Ahsan's treatment of him to several people and even requested to be treated by a different physician. (*Id.* ¶¶ 23-27).

Plaintiff's complaint does not rise to the level of an Eighth Amendment violation. "The Eighth Amendment, through its prohibition on cruel and unusual punishment, prohibits the imposition of 'unnecessary and wanton infliction of pain contrary to contemporary standards of decency.'" *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534, (3d Cir. 2017) (quoting *Helling v. McKinney*, 509 U.S. 25, 32 (1993)). "[P]rison officials violate the Eighth Amendment when they act deliberately indifferent to a prisoner's serious medical needs by 'intentionally denying or delaying access to medical care or interfering with the treatment once prescribed.'" *Id.* (quoting *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976)). To succeed on his Eighth Amendment claim, Plaintiff "must make (1) a subjective showing that 'the defendants were deliberately indifferent to [his] medical needs' and (2) an objective showing that 'those needs were serious.'" *Id.* (quoting *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999)).

The Third Circuit has distinguished between "cases where the complaint alleges a complete denial of medical care and those alleging inadequate medical treatment." *U.S. ex rel. Walker v. Fayette Cty., Pa.*, 599 F.2d 573, 576 n.2 (3d Cir. 1979); *accord Pearson*, 850 F.3d at 535. "[M]ere allegations of malpractice do not raise issues of constitutional import. Nor does mere disagreement as to the proper medical treatment support a claim of an eighth amendment violation." *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987) (internal citations omitted). "[I]t is well established that as long as a physician exercises

professional judgment his behavior will not violate a prisoner's constitutional rights." *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990).

Plaintiff's claims against Dr. Ahsan concern alleged inadequate treatment of his heart condition as opposed to no treatment at all. "[W]hen medical care is provided, we presume that the treatment of a prisoner is proper absent evidence that it violates professional standards of care." *Pearson*, 850 F.3d at 535. Nothing in the complaint suggests anything more than disagreement with Dr. Ahsan's actions. To the extent Dr. Ahsan allegedly did not implement the recommendation for air-conditioned housing: "If a plaintiff's disagreement with a doctor's professional judgment does not state a violation of the Eighth Amendment, then certainly no claim is stated when a *doctor* disagrees with the professional judgment of another doctor. There may, for example, be several acceptable ways to treat an illness." *White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990) (emphasis in original). He does not allege that the cardiologist found that treatment for Plaintiff's heart condition would fail if Plaintiff were not placed in an air-conditioned cell. *See id.* Plaintiff's assertion that Dr. Ahsan acted out of "animosity" toward Plaintiff is nothing more than speculation. (ECF No. 52 ¶ 21).

The Court finds that further amendment would be futile. This case is six years old, and Plaintiff has had several opportunities to state a constitutional claim against Dr. Ahsan. The Court determines that dismissal with prejudice is warranted because the facts as Plaintiff has alleged them do not rise to the level of a constitutional violation and it would be futile to permit further amendment.

**IV.**

For the reasons stated above, Plaintiff's motion to file his opposition as within time is granted. Dr. Ahsan's motion to dismiss is also granted. The claims against Dr. Ahsan are dismissed with prejudice.

An appropriate order follows.

DATED: Oct 31, 2019

PETER G. SHERIDAN
United States District Judge